WILLIAMS vs. DUER.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF EAST BATON ROUGE, JUDGE JOHNSON, THE JUDGE OF THE DISTRICT, PRESIDING.

A party cannot be allowed to appeal from a judgment confessed by him, or in which he has acquiesced, by executing it voluntarily : Neither can he have such judgment amended on the appeal of the adverse party.

Where a vendor and mortgagee goes before a notary, and makes a declaration of release of his mortgage, on certain conditions, it cannot have the force of a contract, without the assent of the mortgagor, although the stipulation is in his favor. But the declaror is bound to carry into effect the intention expressed, whenever the other party signifies his readiness to accept the terms offered, if they have not been retracted.

An injunction case, when the answer is in, may be set for trial, pending a rule to show cause why the injunction should not be dissolved, and on the day fixed for the trial of the rule.

If, in an answer to an opposition obtained against an order of seizure and sale, the party sets up matter different from that in his original petition, or which amounts to a replication, it may be disregarded.

The record is the best evidence to show that certain persons were parties to particular proceedings had in the Probate Court, and is admissible.

On the 20th of May, 1839, the plaintiff obtained an order of seizure and sale, against a plantation, known as the " Arlington Place," for the payment of a note of the defendant for eleven thousand dollars, given in part for the price. The act of sale on which this order was granted, contained the usual clause of mortgage. The plaintiff, Williams, had previously purchased this estate at the probate sale of the succession of F. A. Browder, together with sixty-three slaves, and all the agricultural implements and improvements thereon. On the 20th of July, 1835, he sold and conveyed the Arlington estate, with all the slaves, &c., to Robert Duer, for the sum of one hundred and fifty-four thousand dollars, of which twenty thousand dollars were paid in cash, and the balance in ten instalments, for which the purchaser gave his notes, bearing ten per cent. interest; the vendor retaining his

mortgage until complete payment. He shortly afterwards released his mortgage on ten of the slaves. The second note for eleven thousand dollars, became due in April, 1839, and was protested for non-payment, and upon which the present proceedings were commenced.

The defendant made opposition to the order of seizure and sale, and obtained an injunction on the following grounds : 1. That several mortgages existed on said Arlington estate, against F. A. Browder, deceased, which were not declared at the time of sale. 2. A conventional mortgage in favor of Wilkins & Linton. 3. That Williams and wife had entered into a contract by which they bound themselves to release the remainder of the slaves from the original mortgage, on the condition that each of the said negroes be sold for a price equal to their purchase, and that the money arising from the sale of said slaves, either in whole or in part, should be applied to the payment of the notes and the liquidation of the debt contracted for the said Arlington estate. That he tendered to Messrs. J. and E. F. Phillips, the constituted agents or attorneys in fact of J. C. Williams, nine hundred dollars, as the value of one of the slaves, and demanded that they receive it on behalf of their principal, and release the mortgage, which they refused, alleging that Williams had revoked their power of attorney.

The defendant alleges, that said order of seizure is oppressive and injurious to his rights, and, for these and other causes, he prays that he be permitted to make opposition, and have an injunction staying all further proceedings on said order of seizure, until the said Williams shall cause all of said mortgages to be cancelled and released, and comply with his stipulations and contracts in the premises ; and, that the plaintiff be required to give security against any disturbance of title or possession.

Upon these issues the cause was tried, and evidence offered to sustain the allegations in the opposition and injunction.

The other questions of law which arose on the trial, and stated in the several bills of exception, are fully set forth in the opinion of the court.

There was judgment dissolving the injunction, but requir- ing the plaintiff to give security ; and that he recover from the defendant the sum of eleven thousand dollars, with costs and interest ; and that the mortgaged premises be seized and sold for cash, for so much as will pay the present judgment, and on credit to meet and correspond with the remaining instalments of the price to *become due.* The plaintiff executed an indemnity bond to the defendant, and, notwithstanding, the latter appealed.

*A. N. and R. N. Ogden,* for the plaintiff, prayed that the judgment so far as it required the plaintiff to give bond and security, be amended. They insisted that in this respect the judgment was prejudicial to their client.

2. That a further amendment be made so as to allow the plaintiff the damages he claimed in his answer to the opposition and injunction. The injunction was wrongfully obtained, and damages should be allowed on its dissolution.

*Morgan and Elam,* for the defendants, urged various grounds for the reversal of the judgment.

*Bullard, J.,* delivered the opinion of the court :

The plaintiff, Williams, having procured an order of seizure and sale, was arrested in his progress, by an opposition and injunction on the following grounds : 1st, that the purchaser of the plantation and slaves was exposed to the risk of being disturbed by an outstanding mortgage in favor of the Bank of Louisiana, whose existence was not declared at the time of the contract, and against which the plaintiff, his vendor, is bound to warrant.   2d. That another mortgage on the same property still exists, to the amount of thirty-five thousand dollars, in favor of Wilkins & Linton ; and, thirdly, that the original contract between the parties was afterwards essentially changed and consolidated by a contract, by which it was agreed that Williams would release the mortgage on the slaves, so as to enable the defendant to sell a part, or the whole of them, to meet the payments due to his vendor, and which agreement he had violated.

EASTERN DIST.
*March*, 1840.

WILLIAMS
*vs.*
DUER.

The District Court being of opinion that there was not sufficient evidence of the extinguishment of the mortgage in favor of the bank, directed that the plaintiff should give security against that incumbrance, and decided that the mortgage in favor of Wilkins & Linton, was extinguished by the probate sale, and that the subsequent contract in relation to the release of the slaves from mortgage had no effect upon the rights of the parties. The plaintiff acquiesced in the condition upon which this right to execute the judgment of the court depended, by giving security as required ; and the defendant took the present appeal. In answer to the appeal, the appellee claims the reversal of the judgment so far as it condemns him to give the bond of indemnity, and its affirmance in other respects.

If the only question before the court had been whether the appellee was bound to furnish a bond of indemnity, and he had acquiesced in a judgment against him by giving the bond, it appears to us clear, that he could not have been permitted a direct appeal under article 567, of the Code of Practice, which provides, " that a party against whom a judgment has been rendered, cannot appeal, if such judgment have been confessed by him, or if he have acquiesced in the same by executing it voluntarily." How is the case varied, when that question is combined with others, all of which are solved in his favor except that, and when instead of a direct appeal, he seeks, indirectly by a proceeding authorized by the code and tantamount to a cross-appeal, to rid himself of a condition in which he acquiesced, and from which he could not escape by such direct appeal? We think the appellee ought not to be permitted to seek by a circuitous proceeding, a relief which the law forbids him directly.

*A party cannot be allowed to appeal from a judgment confessed by him, or in which he has acquiesced, by executing it voluntarily; neither can he have such judgment amended on the appeal of the adverse party.*

Under this view of the case it is useless to inquire whether the Bank of Louisiana still retains a mortgage on the property in question ; and, whether the court erred in admitting or rejecting evidence upon that point. We think it equally clear, that the mortgage given by Browder, to Wilkins & Linton, was extinguished by the sale made by the syndics. The only remaining questions, therefore, relate to the effect

which is to be given to the subsequent contract between the parties, and those of practice which arose in the progress of the cause, and which are brought to our notice by sundry bills of exception.

The act in question consists of a declaration before a notary on the 29th June, 1836, by Williams and wife, the vendors, that, whereas, Dr. Robert Duer had mortgaged to them, sixty-three slaves, to secure the payment of the price of the Arlington estate; and, whereas, ten of said slaves have been already released from said mortgage; now, they declare that it is their wish and intention that the balance of the slaves be released from mortgage, either in the whole or in part, and either by these appearers, or in their absence by I. & E. F. Phillips, (who are by these presents duly authorized thereto) upon the condition that each of said negroes be sold for a price equal to their purchase from Dr. Williams, and further, that the money for the sale of said slaves is to be applied to the liquidation of the notes given for the purchase of the Arlington estate. This declaration is not signed by Dr. Duer; and, therefore, although proposing an important derogation from the strict rights of the mortgagee in favor of the mortgagor, yet cannot be said to have, without the assent of Dr. Duer, the force of a contract *invito beneficium non datur.* But it is contended, that such assent was subsequently given before any notice of an intention on the part of Dr. Williams, to retract. In fact, it appears, that on the 8th of April, 1839, Dr. Duer addressed a note to I. & E. F. Phillips, the persons mentioned in the above act, informing them that in order to realize the sum due and to meet the payment of the instalment, he tenders to them nine hundred dollars, the value of one of the slaves, and requests them to release the mortgage, in order that he may effect a sale of her free from incumbrance; and, it further appears, that the offer to pay was made through a notary public, who presented the above note to the Messrs. Phillips, and demanded a release of the slave Sukey. One of those gentlemen replied that they could not release the said slave from mortgage in consequence of the power of attorney for that purpose, having been verbally revoked

Where a vendor and mortgagee goes before a notary, and makes a declaration of release of his mortgage on certain conditions, it cannot have the force of a contract without the assent of the mortgagor, although the stipulation is in his favor. But the declaror is bound to carry into effect the intention expressed, whenever the other party signifies his readiness to accept the terms offered, if they have not been retracted.

by Dr. Williams; whereupon the notary made a solemn protest.

We are of opinion that the Phillips were merely agents, and that Williams had a right to revoke their authority or procuration ; but that he remained bound, notwithstanding such revocation, to carry into effect the intention expressed in the act, whenever Dr. Duer signified his readiness to accept of the terms offered, and that the latter might well have made the tender to Williams, after he was informed that the power of attorney to the Phillips, had been revoked.   Indeed, it is not easy to give a good reason for saying that he is not now under obligations to give effect to his offer, upon the tender being made to him according to the conditions therein expressed.   But while that agreement afforded to the defendant important facilities in making payment, and modified *protanto*, the conditions of the original contract, yet it does not follow that it operated a novation, as contended by the appellant, or even that it changed the place of payment as stipulated originally between the parties, as has been argued by his counsel.   The rights it conferred were *in facultate solutionis*, and if the defendant had made his tender of the price of one of the slaves to the plaintiff, personally, after discovering that he had revoked the powers originally given to the Phillips, we should have considered it our duty to give effect to the agreement so far as concerns the price of one of the slaves.   But that proceeding cannot affect the decision of this case, because the party has not been put in delay.

We proceed to notice those points of practice which are presented by the bills of exception in the record.

The first instructs us, that after the plaintiff, Williams, had filed his answer to the opposition and injunction, to wit, on the 13th of June, and, among other things set forth in his answer, prayed the court for a rule on the defendant, Duer, to show cause on the 21st of June, why the injunction should not be dissolved, which rule was granted ; and on the same day, the said Williams moved that the said suits should be fixed for trial on the same day, to wit, June 21st.   To this

fixing the cause for trial, the counsel of Duer objected, on the grounds : 1st. Because the case could not be set down for trial pending a rule to show cause why the injunction should not be dissolved. 2d. Because, by the answer to the opposition and injunction, the proceeding had been changed from the *executiva* to the *ordinaria,* and ought to be proceeded in as ordinary suits, and the same not having been served more than ten days before the first day of the term, the plaintiff in injunction cannot be ruled into trial at the present term. But the court have overruled these objections and assigned the case for trial, the defendant took his bill of exceptions.

The court, in our opinion, did not err. The summary proceeding was not necessarily converted into the ordinary by answering the opposition, and even if it had been, it would not follow that the case could not be assigned for trial during the term, because more than ten days from the service had not elapsed before the first day of the term. We have twice ruled otherwise within a few days. Nothing prevented the party from obtaining a further delay, if necessary for his defence. Nor was the fixing the case for trial, in our opinion, incompatible with the rule to show cause why the injunction should not be dissolved. The proceeding is authorized by article 741, of the Code of Practice, which gives the plaintiff a right to compel the defendant to prove in a summary manner the truth of the facts alleged. In the case of Forsyth *vs.* Lacoste, 2 *Louisiana Reports,* 321, the court held that the proper mode of proceeding was by serving a rule to show cause why the injunction should not be dissolved. The trial of such a rule would necessarily involve the whole merits of the opposition, and would be essentially a trial upon the merits. There are cases, undoubtedly, in which no evidence is to be admitted, as when a motion is made to dissolve the injunction for want of equity on the face of the papers. But the case now before us is different. 5 *Louisiana Reports,* 52 *;* 8 *Martin, N. S.* 561 *;* 4 *Louisiana Reports,* 90 *and* 293.

The court did not, in our opinion, err,.in refusing to direct certain parts of the plaintiff's answer to the opposition to be struck out. If the part objected to was contrary to the

An injunction case, when the answer is in, may be set for trial, pending a rule to show cause why the injunction should not be dissolved, and on the day fixed for the trial of the rule.

If, in an answer to an opposition obtained against an order of seizure and sale, the party sets up matter

different from
that in his ori-
ginal petition, or
which amounts
to a replication,
it may be disre-
garded.

original petition, or amounted to a replication, it might well be disregarded without being stricken out; and, especially, was it proper to retain that part in which the plaintiff proffered to give security if required, to indemnify the defendant against certain incumbrances.

We learn by the next bill of exceptions, that on the day assigned for hearing the rule, the defendant, Duer, appeared by his counsel, and moved that it should be discharged on the following grounds. 1st. Because he could not be ruled *to trial on the merits, or on the issues joined, pending a rule* to show cause why the injunction should not be dissolved. 2d. Because the proceeding having been converted from the executory to the ordinary, the cause ought to be heard and determined as in ordinary cases, and the same not having been served more than ten days before the first day of the term, the plaintiff in injunction cannot be ruled into trial. 3d. That the law relating to summary proceedings is not applicable to this case. These objections and motion were overruled and the trial ordered to proceed, and the defendant took his bill of exceptions.

On most of the points thus presented, we have already expressed our opinion. Upon the last point we concur with the district judge, and, in our opinion, whether the proceeding be considered of the ordinary character or summary, no good grounds were suggested for discharging the rule, or postponing the trial.

The plaintiff offered in evidence a copy of the proceedings had in the Court of Probates in the settlement of the estate of Browder, to show that Wilkins & Linton, as well as the Bank of Louisiana, made themselves parties. To which it was objected by the defendant that he was not a party, and that the record was inadmissible. It was admitted, and a bill of exceptions taken.

The record is
the best evidence
to show that cer-
tain       persons
were parties to
particular pro-
ceedings had in
the       Probate
Court, and is
admissible.

The question was, whether Wilkins & Linton were parties to the probate proceedings, and the highest possible evidence of that fact was the record itself, which was very properly admitted.

There are other bills of exceptions relating to the admission

of evidence touching the mortgage to the bank, which, we have already remarked, it is not necessary to notice.

Upon the whole, we conclude that there is no error to the prejudice of the appellant.

The judgment of the District Court is, therefore, affirmed, with costs.