Simon, J.*
The Bank of Louisiana is appellant from a judgment by which it is made liable to pay to the plaintiff the sum of $11,305 91, as damages sustained by the plaintiff in consequence of certain repeated assertions and pretensions made and set up by the Board of Directors, as to the existence of a conventional mortgage on a plantation and slaves, previously sold by the *317 plaintiff to one Duer, which mortgage the Bank refused to erase and release, on being applied to for that purpose by the plaintiff.
The history of this case is as follows: The plaintiff having purchased at the probate sale of the succession of F. A. Browder, a certain plantation called the “ Arlington Estate,” with sixty-three slaves, and all the agricultural implements and improvements thereon, sold the same*, on the 17th of July, 1835, to Robert Duer, for the sum of $154,000, of which twenty thousand dollars were paid in cash, and the balance was payable in ten instalments for which the purchaser gave his notes, bearing ten per cent interest. This property, when belonging to the estate of Browder, was subject to a mortgage, among others, in favor of the Bank of Louisiana, which mortgage had not been released at the time of the sale by Williams to Duer. The vendor retained his mortgage until complete payment; and shortly after released his mortgage on ten of the slaves.
The second note, for $11,007, having become due in April, 1839, and having been protested for non-payment, Williams, on the 20th of May following, obtained an order of seizure and sale of the property sold to Duer, and was about causing the same to be executed, when the defendant arrested his proceedings by an opposition and injunction, on several grounds ; among which it was alleged, “ that the purchaser of the plantation and slaves was exposed to the risk of being disturbed by an outstanding mortgage in favor of the Bank of Louisiana, whose existence was not declared at the time of the contract, and against which the plaintiff, his vendor, was bound in warranty.” This opposition, founded upon three distinct grounds, became the subject of a suit to which the Bank of Louisiana was not made a party; and the District Court being of opinion, that there was not sufficient evidence of the extinguishment of the mortgage in favor of the Bank, directed as to this ground, that Williams should give security against the incumbrance; which condition was immediately acquiesced in by the plaintiff, who, in order to be enabled to proceed, furnished the security • required. The defendant, however, took an appeal to this court; and the whole case having been brought up, the judgment appealed from was affirmed. See 14 La. 523.
*318 It appears, further, that the injunction obtained by Duer having been dissolved by the District Court, and the defendant having taken a suspensive appeal, Williams applied for and obtained, pending the appeal, writs of sequestration and injunction, and had the crops growing on the plantation sequestered. This proceeding was had by virtue of the privilege claimed by Williams on the fruits of the property seized ; and the District Court having rescinded and set aside the writ of sequestration, and dissolved the injunction, an appeal was taken by the plaintiff to this court; whereupon the judgment of the inferior court was reversed, the writs of sequestration and injunction reinstated, and the case remanded for further proceedings. See 14 La. 532.
The record further shows, that previous to Williams’ obtaining his order of seizure and sale against Duer’s property, applications were made by him (Williams) to the Bank of Louisiana, for the purpose of obtaining from that bank the release of the mortgage existing on the property at the time of his purchase. The Board of Directors were advised by their counsel, that they could properly give a certificate stating that the Bank had no claim upon the Arlington plantation, formerly belonging to F. A. Browder; such a certificate was prepared and presented to the Bank on the 23d of April, 1839, but the Bank having refused to grant it, the plaintiff, on the 4th of May following, took a rule on it and other persons, to show cause why the different mortgages therein stated, should not be erased from the record books of the Recorder of Mortgages of the parish of East Baton Rouge. The object of this rule was strenuously contested by the Bank of Louisiana, whose claim against the estate of Browder had been much reduced, and amounted only to $4216 with interest; and the District Court having ordered all the inscriptions of mortgages existing on the property adjudicated to Williams, and, among others, that of the Bank of Louisiana, to be erased and cancelled, the Bank took an appeal to this court, upon which the judgment complained of was affirmed. See 17 La. 378.
It further appears from the evidence, that the Arlington plantation having been offered for sale by the Sheriff on the 17th July, 1840, by virtue of the order of seizure and sale heretofore enjoin *319 ed by Duer, was adjudicated to the plaintiff for the sum of $96,000, making a difference between the amount due and the proceeds of the sale of about $38,000, which is a part of the claim set up by the plaintiff in the present action. There is no proof, however, that this difference was exclusively the result of the depreciation of property, between the period of the first seizure and that of the sale. It may be attributed partly or wholly to the depreciation which may have taken place between the date of the sale to Duer, and that of the sale by the Sheriff; and nothing shows for what proportion, if any, the plaintiff can set up a claim for damages for the delay occasioned by Duer’s injunction. The evidence establishes Duer’s complete inability to pay any part of the balance due to the plaintiff; but proves also that his sureties on the injunction bond are perfectly solvent and able to pay the amount of the bond.
The District Judge based his judgment in favor of the plaintiff on the value of Duer’s crop made in 1839, and on the legal expenses incurred in-the injunction suit, stating in his judgment, that it is presumable, had it not been for the injunction suit, that the plaintiff would have obtained possession of the Arlington plantation in June, 1839, and would not haye incurred the charges of that suit. He estimates the crop, according to the evidence, at $9108 56, which added to $2197 35 of costs, as shown by the return of the order of seizure and sale, makes a sum of $11,305 91, which the defendants are condemned to pay to the plaintiff.
It is first to be noticed, that the existence of the mortgage insisted on by the Bank of Louisiana, was not the only ground upon which Duer’s application for an injunction was founded. His petition contains other grounds, which, of themselves, would have been sufficient to support his demand ; and we are not prepared to say, that the refusal of the Bank to cancel a mortgage which was to secure a sum of only $4216, was the cause, nay, the principal cause of Duer’s objecting to the seizure and sale of the property. It appears that he complained of Williams’ noncompliance with a subsequent contract alleged to have been entered into between them. This was the main cause of the controversy ; and had the difficulty that existed between the parties been limited to the effect of the Bank’s mortgage, it is evident *320 that Williams’ acquiescence in the condition imposed upon him by the judgment of the District Court, would have put an end to the controversy. He was ordered to furnish security, which he did without further objection. He showed himself thereby fully satisfied with the judgment; and had there been no other impediment to the Sheriff’s proceeding to the execution of the order of seizure and sale, it is clear that Duer would have had no ground for an appeal, and that the dissolution of the injunction would have had its full effect. 14 La. 525. If this be true, how can it be said that the mortgage asserted by the Bank was the only cause of the injunction ? How can it be pretended that without the Bank’s mortgage there would have been no obstacle to the Sheriff’s executing the order of seizure and sale ? The Judge, a quo, says, that it is presumable, had it not been for the injunction suit, the plaintiff would have obtained possession of the property in June, 1839, and would not have incurred heavy expenses. This is correct, as to the consequences of the injunction; but we cannot agree with him as to the cause. The Bank’s pretended mortgage was not the principal or only cause, and this cause had ceased previous to the appeal taken by the complainant, Duer.
Now, it is also shown by the evidence, that some time before Williams’ application for an order of seizure and sale, he had taken a rule on the Bank to show cause why the mortgage subsequently complained of by Duer, should not be released. This controversy was pending at the time of the executory process, and Williams well knew that it could not he determined before the day fixed for the sale. He was aware that this would be an obstacle to the sale, and that, whether right or wrong, the Bank’s pretensions would perhaps give Duer a right to demand security for the amount of the mortgage. Civ. Code, art, 2535. Was it not, then, his duty to offer him the security required by law? Would not such an offer have put an end to the difficulty ? This he did afterwards ; but it is obvious that if the offer had been made previous to the injunction suit, this ground could not have availed the debtor as one of those upon which the injunction was obtained.
From the facts stated in our decision reported in 17 La. 398, it is clear, that the Bank’s mortgage had ceased to have any effect, *321 long previous to the executory proceedings resorted to by the plaintiff; and that the Board of Directors would have run no risk in following the advice of their able counsel. They were applied to for that purpose by the plaintiff, and they refused ; but is this a reason why the institution should be mulcted in heavy damages, when no fraud or any other bad motive is brought home to the Board of Directors ? They asserted a legal right which they conceived had never been lost; this right became the subject of a serious litigation, and it did not require less than a decision of this court to convince them, that their pretensions were unfounded, and that, by their own acts, they had lost their mortgage. But again, why should we allow the plaintiff to be compensated for the consequences (uncertain as to their being the cause of any injury,) of the error of his adversaries ? Nothing shows that the latter were not in good faith. As directors of a bank, they are acting for others as well as for themselves. They had no improper motive in view; none in which they could have had any interest but that of securing the amount due to their institution ; and it does not seem to us, under the circumstances, that they can be made liable to pay any thing more than the costs of the suit in which their defence was unsuccessful, and their alleged right of mortgage annulled and rejected. Were it otherwise, there would be danger in asserting and endeavoring to sustain a misconceived legal right, and this would often be followed by the most unjust and injurious consequences.
We have been referred to the case of Wilkins’ Heirs v. Bassett, lately decided in the Western District, as being analogous to the present one; but we think that there is a vast difference between the two cases. There, Wilkins who was the defendant’s vendor and warrantor, and who had issued an order of seizure and sale against the property to satisfy the claim for the purchase money, had in his possession the receipts and other vouchers necessary to obtain the release of a pre-existing mortgage reserved in favor of his own vendor; he withheld those documents, though called on repeatedly by his vendee and by the Sheriff to get the release of the mortgage, which was a great obstacle to the Sheriff’s selling the property ; this he always refused to do, and the consequence was, that the property could not be sold but at a *322 late period, and at a very great sacrifice. He was the active cause of the injury, by his constant refusal to get the release, as he well knew that the mortgage did not exist and had been paid for ; and we said that, by the terms of his warranty, he was bound to clear the property of all encumbrances, and was not authorized, by any principle of law or justice, to keep a mortgage hanging over it, when it was in the market for sale, and it was the interest of the defendant, his vendee, to give a good title and get a fair price. Here, on the contrary, there was no obligation on the part of the Bank to release the mortgage, unless the amount secured by it had been paid. There was a balance yet due on that amount; and although the mortgage was subsequently pronounced to have been destroyed by the acts of the mortgagee, we cannot say that it was the legal, or even the moral duty of the Bank to erase it, on being simply applied to for that purpose, as they had reason at least to doubt whether their acts had the effect of depriving them of the benefit of their security. If they erred, it was in good faith ; and this cannot give to the plaintiff any right of action against the Bank, who stood upon their legal rights, and whose error could not be, and was not ascertained but by the result of a judicial contest.
It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed, and that ours be for the defendants with costs in both courts.

 Judges Morphy and Garland, being interested in the question, did not sit on the trial of this case.