## No. 5903.

### SUCCESSION OF BERNARD STOLTZ.   ON APPEAL FROM JUDGMENT CANCELING MORTGAGES.

This succession was not administered as a vacant one, and whatever doubts may have existed at some time in regard to the right to sell for cash succession property to pay debts for less than the appraisal thereof they should now be regarded as settled by the repeated decisions of this court. Under the jurisprudence of this State, at least, this principle has become a rule of property which should not be disturbed.

APPEAL from the Second District Court, parish of Orleans.   *Tissot,* J.   *Buck & Dinkelspiel* and *George H. Braughn,* for executrix and appellee.   *McEnery, Ellis & Ellis,* for defendant and appellant.

LUDELING, C. J.   The executrix of the succession obtained an order to sell property to pay debts.   The piece of property upon which the appellant held a mortgage was sold for cash for less than its appraisement, and on a rule having been taken against the mortgagee to show cause why the mortgage should not be canceled by the Recorder of Mortgages, he urged the nullity of the sale, because it was sold for cash and for less than its appraisement, claiming that the property should have been sold on a credit of one and two years ; or, if it could have been sold for cash at all, only for its appraised value.

This succession was not administered as a vacant succession, and whatever doubts may have existed at some time in regard to the right to sell succession property to pay debts for less than the appraisal thereof we think, should now be regarded as settled by the repeated decisions of this court.   See 7 La. 317 ; 13 La. 86 ; 10 Rob. 398.   In the last-named case this court said : "It has been repeatedly held that when the sale is made to pay debts, the property may be sold for less than the appraisement."   This was reaffirmed in 11 Rob. 510 ; 2 An. 967 ; and 4 An. 579.

We can not regard the decision in 12 An. 368 as overruling these decisions; no reference in it is made to the former decisions, and the

opinion was based exclusively on articles 990, 991, and 992 of the C. P. In Richards, Administrator, vs. Denel et al. this court said : "The powers, rights, and duties of an administrator are assimilated by article 1042 to those of curators of vacant estates." Under article 1051 "He must proceed to the sale of the property of the succession he administers, and to the settlement of its affairs  *  *  *  In such sales no law requires that the property shall produce its appraised value, or that a reappraisement be made in case the first estimation be not obtained." In the succession of Wadsworth this court said : "The objection is put in argument upon the technical ground that the sale could not be made for less than the amount of appraisement in the inventory. We think this point is covered by the cases of Tewles vs. Weeks, 7 La. 312, and Richards vs. Denel, 11 Rob. 508. It is particularly to be observed in the present case that there are no minor heirs, and that the sale was ordered on a credit upon application of the administrator, and for the purpose of paying debts." 2 An. 967. Under the jurisprudence of this State, at least, this principle has become a rule of property which should not be disturbed.

It is therefore adjudged that the judgment appealed from be affirmed with costs of appeal.

TALIAFERRO, J., *dissenting.* I am clearly of the opinion that there is no law of this State that authorizes the sale of property of an estate for less than its appraised value where the sale is made for *cash.* The articles 1169 and 1170 of the Civil Code do authorize the sale of the property of vacant estates for two-thirds of its appraised value *on a credit of one and two years.* Failing to bring two-thirds of its appraised value, it may be sold on a credit of one, two, and three years. These articles apply exclusively and especially to sales of immovable property of vacant estates which remain, after all the debts of the estate have been paid and the estate finally settled. In such cases, there being no heirs or persons entitled to the remaining immovables who have appeared and claimed it, the law-giver directs that the curator shall retain the property twelve months to enable the owners to come forward and receive it. If no one entitled to the property presents himself within that time, the curator is directed to sell as above stated in conformity with the articles recited. In all sales made in pursuance of these articles the property is sold as a matter of expediency and not as a matter of necessity. It is sold on a credit and not for cash. It is sold in the interest of unknown owners, if any such should ever appear to receive from the State treasury the proceeds realized from the sale of it. It is sold in pursuance of public policy, which is against its remaining out of commerce. It is evident that the articles 1169 and 1170 have no application whatever to sales of succession property for cash to pay debts.

There is not besides those articles anything to be found in the Codes or Statutes of the State authorizing the sale of succession property for less than its appraised value when the sale is made for cash to pay debts, except, perhaps, in sales under executory process, where by the act importing confession of judgment there is waiver of appraisement. The articles 1164, 1165, 1166, and 1167 of the Civil Code treat of the mode of procedure in selling the property of vacant successions to pay debts; but these articles contain no provision in reference to whether the property shall bring its appraised value, or whether it may be sold for less. The articles 1668, 1669, and 1670 of the Civil Code treat of the duties of testamentary executors in regard to obtaining the means necessary to discharge the debts and legacies of sums of money to be paid out of a succession; but these articles are silent as to whether the property shall bring its appraised value or be sold for less. But these articles point in an unmistakable manner to the provisions of the Code of Practice, that do, in direct and plain terms, prescribe fully and clearly in every particular, the formalities to be observed in selling the property of every kind of succession, in cases where the property is sold for the purpose of paying the debts of the succession. Thus, article 1670 of the Civil Code prescribes that "the testamentary executor shall proceed to the sale above mentioned and to the payment of the debts of the succession in the same manner as is prescribed for curators of vacant successions." Now, what is the manner prescribed for the sale of the property of vacant successions? The entire proceedings fixed by law to be observed in sales of succession property to pay debts are found in articles 990, 991, and 992 of the Code of Practice, and they are found nowhere else. Article 990 of the Code of Practice directs that—

"It shall be the duty of the several judges of probate on the application of the creditors, or any creditor, *of a vacant estate,* to cause, on the requisite advertisement being made, so much of the property of said estate as is necessary to pay the debts of the same which may be due, to be offered for sale and sold at public auction to the highest bidder, for cash if the creditors require it, and if on thus offering said property for sale, *the appraised value should not be bid and obtained,* then the same, in not less than fifteen nor more than twenty-five days from the time it is thus offered, be sold at public auction, and after public advertisement, to the highest bidder, for what it will bring, on a credit of twelve months; provided that in all sales of effects belonging to successions, minors, or interdicted persons, on a credit, the purchaser shall give a twelve-months bond, with good security, to be approved by the representatives of the estate, minor, or interdicted person, and a mortgage retained on the property sold; if it be mortgaged property, the bond to be duly recorded, so as to operate a mortgage, such bond to have force and effect

as twelve-months bonds taken in sales under writs of *fieri facias;* and the collection of such twelve-months bonds shall be enforced in the same manner as twelve-months bonds taken in accordance with articles 719 and 720 of the Code of Practice, upon execution issued upon such twelve-months bonds by the clerk of the court which issued the order for sale of the property, and such clerks are hereby authorized and required to issue such executions on the demand of any person having the legal right to control such bond."

Article 991 directs that "it shall be the duty of the judge of probate in all cases of *vacant estates*, on the application of the creditors or of any creditor thereof, whose debt shall not then be due, to sell, after the usual advertisements upon the conditions contained in the preceding article, so much of the estate as will be sufficient to pay the claim or claims of the creditors who shall make the application, and in such terms of credit as will correspond with the falling due of the several claims of the creditors."

These two articles, it will be noticed, speak specially of *vacant estates*. Now comes the next article, 992, which applies the rules and principles laid down in articles 990 and 991 to all kinds of estates, in these terms, to wit:

Article 992.—" The principles contained in the two preceding articles shall apply to all successions accepted with benefit of inventory, whether the heirs or minors are of age, and to all successions administered by administrations."

But it is held that the jurisprudence of the State has settled the doctrine that when the sale of succession property is made to pay debts, the property may be sold for less than its appraisement. I do not so understand the import of the decisions referred to to sustain this opinion. I propose to refer to these decisions and discuss their purport and meaning, as shown by the terms and expressions used and in reference to their contents.

Fifth Louisiana, p. 434.—In this case the property was sold for its appraised value, and there is nothing which touches the question.

Seventh Louisiana, p. 312.—The succession was insolvent. It was administered by the tutrix of her minor child. The tutrix treated it as insolvent estate, and made a surrender of it to the creditors. They fixed the terms on which the property was sold, and it was sold for something less than the appraisement. The tutrix, authorized by a family meeting, agreed to the proceedings of the creditors. The sale was held valid. The surrender of the estate was recognized as legal. The court said:. "A sound interpretation of the law in relation to the administration of estates, whether vacant or accepted with benefit of inventory, will in many

cases authorize a departure from the rule requiring property of minors to bring its appraised value before it can be sold." That case was one in point, because it was legally surrendered to the creditors as insolvent, and the creditors by law were vested with the right of selling the property on their own terms. The minor in that case had no reversionary interest whatever in the property. The whole of it when sold did not pay the debts of the estate. The action taken by the tutrix and the family meeting were entirely nugatory. Another instance supporting the announcement of the court is the exceedingly common case of selling the property of estates on a credit of twelve months for whatever it will bring, without regard to appraisement, where the purpose of selling is the raising of money to pay debts. Yet another instance is where, in an authentic act, the benefit of appraisement of the mortgaged property is waived. But nothing decided in the case under consideration touches the question: Can the property of estates be legally sold for cash for less than the appraised value?

Eleventh Louisiana, 156.—The heirs appealed from a judgment rendered by a probate court homologating a sale. *In argument* it was contended that the property was sold for less than its appraised value, and the sale was therefore null. The court refused to consider the objection, because it was not alleged in the pleadings. This case has no bearing on the question.

Thirteenth Louisiana, 84.—Nothing appears in this case touching the point. It was remarked by the court that " when creditors sue for their debts and procure a sale of the estate for their payment, the 'land may be sold as in other cases, although minors be interested therein."

Tenth Robertson, p. 398.—It is here stated by the court that " it has been repeatedly held that when the sale is made to pay debts the property may be sold for less than the appraisement." This is a mere repetition of what was said in some of the preceding cases just referred to, and does not come any nearer the point than they do.  2 An. 96.

This case has no bearing on the question. Now, in the case of Fritz, on rule taken by Davis, 12 An. 368, I think the court has directly decided the question. Here, the terms of sale of the property of a succession accepted with benefit of inventory were for cash. The property and immovables did not bring the appraisement. Held, that there was no sale which the purchaser could compel the tutrix to complete, although the property was ordered to be sold to pay debts. It should have been readvertised and sold on terms of credit of less than twelve months. Judge Merrick, the organ of the court, founded the judgment on articles 990, 991, and 992 which, in the decree, he quotes *in extenso.* Subsequent decisions have repeated in substance the vague, indefinite language used in most of the cases I have reviewed, and

which I contend do not authorize the sale of succession property for less than its appraised value when sold for cash to pay debts, but go no further than to announce vaguely that the property of estates when sold to pay debts may be sold for less than its appraisement, which is true only in respect to sales on twelve-months credit.

Rehearing refused.