## No. 9663.

## STEPHEN DUNCAN vs. DAVID WISE.

A writ of sequestration is issuable by a creditor having a special mortgage when he apprehends that the mortgaged property will be moved out of the State before he can reap the benefit of his mortgage, and therefore the propinquity of the property to the border of another State is an element to be considered in estimating the strength and reality of his apprehension.

It is not what a debtor really intended to do that is to be considered in determining whether a sequestration has been lawfully sued out, but whether he was doing and saying that from which his creditor might apprehend the existence of an intention to do the hurtful thing that a sequestration would prevent.

A mortgage-creditor who has waited longer for payment than he stipulated to wait, whose debtor has defaulted on the payment of several of the notes, and who proceeds to a foreclosure only on the eve of the last-maturing note, is not liable in damages when he has used conservatory process to detain the property in the custody of the law under circumstances justifying it.

On separate demands in the same suit, a judgment was rendered against the defendant, and another judgment for a smaller amount in favor of defendant against plaintiff. Defendant appealed devolutively from the two judgments.

Held: 1. The devolutive appeal did not deprive plaintiff of the right to execute his judgment.

2. The two judgments being only devolutively appealed from were equally exigible, and the law operated a provisional compensation between them, effective so long as both judgments existed unreversed.

3. The plaintiff's right of execution was confined to the excess of his judgment over that of defendant against him.
4. The existence of execution of a *fi. fa.* for such excess only was not such voluntary acquiescence in the judgment of defendant against plaintiff, as would prevent the latter from asking amendment of such judgment on defendant's appeal to this Court.

A PPEAL from the Ninth District Court, Parish of Tensas.
   *Young,* J.

*Steele & Garrett,* for Plaintiffs and Appellee:

1. To sustain a sequestration, the question is not what the friends and neighbors of defendant thought or believed he would do, but what had the plaintiff a right to believe the defendant was doing and would continue to do, from his own acts, declarations and tacit admissions.    Allen, Nugent & Co. vs. Champlin, 32 Ann. 515; Portle vs. Price, 31 Ann. 361.

2 A writ of sequestration is a lawful act, and in event of failure there should be no damages under the ordinary rule, and in no case should the damages exceed the actual and direct loss.   Braxton vs. Broom, 15 Ann. 618.

3. Upon the dissolution of a sequestration, no damages can be allowed in the same suit, as in case of injunction. This question does not depend upon the residence of the parties, but upon the fact that there is no statute authorizing such imposition of damages. Muzan vs Gore, 24 Ann. 208.

4. A judgment giving interest from demand upon damages claimed will be reversed. 37 Ann. 497; 15 Ann. 504; 1 Ann. 383.

*Kennard, Howe & Prentiss* on the same side.

*Wade R. Young,* for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J. In January, 1881, Stephen Duncan sold to David Wise, the Newfoundland plantation, in Tensas parish, for $20,000, of which three thousand were paid cash, and for the residue four notes were executed secured by mortgage and vendor's lien. One of these notes was paid and executory process was obtained on the others in the latter part of 1884, which was discontinued and an ordinary suit for foreclosure was instituted in January, 1885. At the same time the mules, farming implements, and other movables were sequestered.

The foreclosure of the mortgage was not resisted nor any portion of the debt denied, but the defendant answering the suit reconvenes for fifty thousand dollars as damages suffered by reason of sequestration, and a jury gave him five thousand four hundred dollars therefor, nearly one-half of the unpaid principal of his debt.

The sole question is the lawfulness of the sequestration.

The writ is issuable by a creditor having a special mortgage when he apprehends that the mortgaged property will be moved out of the State before he can have the benefit of his mortgage. Code Prac. Art. 275. The plantation is on the border of the Mississippi river. The

shore of another State is just opposite. Its propinquity is an element to be considered in estimating the strength and reality of the creditor's apprehension.

The plaintiff alleged his apprehension in the words of the Code and states the reason of it;—

" That the said David Wise has notified the attorneys of petitioner that he had arranged and concluded to turn over all the mules and work stock on said plantation and mortgaged premises in payment of an indebtedness to V. & A. Meyer & Co., of New Orleans ; and that said V. & A. Meyer & Co. have already caused said property to be once removed from the mortgaged premises ; and though said mules were afterwards returned, the petitioner fears that said David Wise will conceal, part with, or dispose of the said mules and other movables upon said plantation, on which petitioners privilege and right of mortgage rests during the pendency of this suit."

A brief recital of antecedent events will shew whether cause for apprehension had been given by the defendant, for it is not what he really intended to do or not to do that is to be considered, but whether he was doing and saying that from which his creditor might apprehend the existence of an intention to do the hurtful thing that a sequestration would prevent. Allen v. Champlin, 32 Ann. 511.

Duncan wrote to Wise early in November 1884 that he would require a payment of $4250 on December 1st and $2200 in January, and would be content with nothing less  The debt was double those sums and was all due or would be in January. At the same time he wrote his lawyers that he did not want to foreclose the mortgage but thought an urgent letter from them to Wise would ensure a compliance with his demand. Wise and the lawyers had an interview on the 19th of November and the conversation then had caused the lawyers to take out the sequestration. Their accounts of it do not materially differ.

Wise had given V. & A. Meyer of New Orleans a second mortgage on the plantation and that firm had advanced him the money to buy mules. He thought they had a claim on the mules superior to Duncan's, or rather to use his own language he "thought as the mules were mortgaged to V. & A. Meyer that they belonged to them," and he told the lawyers so. He proposed to surrender the plantation to Duncan and the mules to the Meyer firm. There were twenty-eight of them and cost $140 apiece.

Mr. Steele and Mr. Garrett both swear that in this conversation Mr. Wise stated that the mules were not subject to Duncan's mortgage and that he had arranged with V. & A. Meyer that they should take

the mules and cancel their mortgage on the property, and that this statement, taken in connection with the fact that the mules were located so near the Mississippi river, the boundary between Mississippi and Louisiana, and could be moved in a few hours out of this State, induced them to believe that the defendant intended to remove the mules herefrom. They believed he would be advised so to move the mules beyond the jurisdiction of the Tensas court in order to avoid their being subjected to Duncan's mortgage, and they promptly provoked the issuance of the writ to thwart the execution of this plan. But they "took unusual precautions (we are quoting from Mr. Steele's testimony) to prevent interrupting business or annoying Mr. Wise. We instructed the sheriff to make Mr. Wise's manager, or any other person he might select, custodian of them, and not to interfere with the use of the mules by Mrs. Wise or with the gathering of the crops."

The defendant's version will be given in his own words:

"I told them, if Mr. Duncan would take the place, that V. & A. Meyer would take the mules, as they were mortgaged to them. I never told Steele & Garrett that I would move the mules from the State, and never expressed any such intention. I could have moved the mules from the State, had I desired to do so. I was informed of the contemplated seizure in time to have removed the mules, had I desired to do so. I was offered assistance in removing them, but I declined to remove them."

Neither Mr. Steele nor Mr. Garrett asserted that the defendant had said he would move the mules from the State. Their whole argument is based on the theory that such positive declaration of intention is not necessary to justify the issuance of the writ, and it is manifest that if he had made that declaration there would be no dispute about their client's right to the writ. In attributing to Mr. Wise an intention to remove the mules it is not at all necessary to impute to him dishonesty, for he made it manifest that he thought Duncan had no claim to the mules. The Meyers were his friends and factors, and their money loaned to him had bought the mules and he believed that honesty rather required he should aid them in getting them. But Duncan had legal claims on the mules that he could lawfully assert and enforce, and it was not his policy just then to convince his debtor by argument that he was in error of law, but to use the machinery of the law to prevent his debtor from making practical demonstration of the sincerity with which he nursed his error.

Other creditors than the plaintiff thought the condition of the defendant's business required and justified resort to extraordinary pro-

Duncan vs. Wise.

cess. His friends Y. & A. Meyer took out an attachment on 2d of December, after the discontinuance of the plaintiff's first sequestration and on the same day the executory process was issued, and alleged that they verily believed that Wise was about to dispose of his property with intent to defraud his creditors and that he was about to convert his property into money with intent to place it beyond their reach. It is no answer to this to say that their action was provoked by the plaintiff. If Wise's friends and factors believed that he was about to act dishonestly in December, Duncan's apprehensions cannot be considered baseless and ill-founded when he first sequestered in November or when he made the seizure complained of in January. These identical mules were seized under that attachment and were removed from the plantation although they were soon returned, the attorneys who obtained the attachment becoming satisfied that the plaintiff had the superior lien.

Other creditors did likewise. Wise was a merchant as well as planter. Friedman Brothers of Boston and Heller of Tensas attached. Indeed it is not pretended that Wise was not insolvent at this time. The ruin of his credit is the thing he complains of. He repeats in his testimony that but for the plaintiff's harsh and precipitate action his credit would have remained good. It would be perilous for any one to be a creditor of a Louisiana planter or merchant if he is liable to be mulcted in damages for using against his insolvent or embarrassed debtor such process of law as has been provided for emergencies such as this record discloses.

But in truth an honest man's credit is not ruined by disaster in business if general belief in his honesty survives the disaster. His credit receives a temporary shock but is not destroyed. One Moss, who is sometimes inquired of by a commercial agency, touching the standing of his neighbors in a business point of view and who furnishes the information desired, says " a seizure of a merchant's property is a death-blow to his commercial credit." The experience of the commercial world shews that a merchant's credit suffers only an intermission if his " failure " is wholly without moral blame. Mr. Meyer says " we considered it hazardous to make him (Wise) further advances in view of the complication this seizure created. A seizure of his property has the effect of seriously damaging his commercial reputation and credit." Undoubtedly for the time, but the particular reason why his firm as prudent men considered it hazardous to advance further to Wise was the seizure of the plantation, because that seizure made doubtful whether Wise could longer cultivate it. Now surely a mortgage-

creditor who has waited longer for his money than he stipulated to wait, whose debtor has defaulted on the payment of two of a series of four notes and who proceeds to a foreclosure not until the eve of the last-maturing note, cannot be expected to defer longer simply because a seizure will create a complication that will make it hazardous for any one to advance him further. And as little can he be expected or required to forego using any process for detaining in the custody of the law the property upon which he has a lien for the security of his debt.

Sequestration is a harsh remedy but the Code of Practice has particularized the instances in which it may be used. The plaintiff believed he had good reason for the apprehension he felt. The defendant's declaration to him was well calculated to inspire it, and his use of the writ was authorized under the circumstances. But if the remedy was harsh, it was not harshly used. The plaintiff's instruction to the sheriff deprived it of any more injury than was inevitable, and whatever damage ensued was necessarily incident to the service of the writ.

The defendant denies the right of the plaintiff to urge the rejection of the reconventional demand for damages in this Court because, as he alleges, the plaintiff has acquiesced in the judgment and therefore cannot obtain any relief here.

The judgment on the verdict of the jury was in favour of the plaintiff for the amount of the notes and interest with recognition of his mortgage and vendor's lien, and in favour of the defendant for $5400 as damages for the illegal sequestration which was dissolved. The defendant appealed devolutively and the plaintiff took out execution and the property was sold. The writ of *fi. fa.* necessarily ordered the execution of the judgment as it stood, i. e. the sale of the mortgaged property to pay the mortgaged debt subject to the writ of $5400 awarded the defendant as damages. The plaintiff in his answer to the appeal prays an amendment of the judgment below in this, that the sequestration be sustained and the damages disallowed. The acquiescence alleged is the execution of the judgment with a credit upon it, and the defendant insists that the appellee cannot now disavow the credit.

He cites Williams v. Duer, 14 La. 523, as conclusive of the question and De St. Romes v. Steam Press Co., 31 Ann. 228, as confirmatory of it.

In the first case the plaintiff Williams, having procured an order of seizure and sale, was arrested in its execution by an injunction on this ground among others, "that the purchaser of the plantation was exposed to the risk of being disturbed by an outstanding mortgage in

favour of the Bank of Louisiana the existence of which had not been declared at the time of the contract and against which the plaintiff his vendor is bound to warrant." The district court was of opinion that there was not sufficient evidence of the extinguishment of the Bank mortgage, and while dissolving the injunction ordered that the plaintiff should give security against that incumbrance. The plaintiff had judgment for his mortgage-debt and the property was ordered to be sold. The defendant appealed. The plaintiff gave the security as ordered and in his answer to the appeal prayed the reversal of the judgment so far as it condemned him to give the bond of indemnity. The Court say : —

"If the only question before the Court had been, whether the appellee was bound to furnish a bond of indemnity, and he had acquiesced in a judgment against him by giving the bond, it appears to us clear that he could not have been permitted a direct appeal under Article 567 of the Code of Practice, which provides that a party against whom a judgment has been rendered cannot appeal, if such judgment have been confessed by him, or if he have acquiesced in the same by executing it voluntarily.

"How is the case varied, when that question is combined with others, all of which are solved in his favor except that, and when, instead of a direct appeal, he seeks, indirectly by a proceeding authorized by the Code and tantamount to a cross-appeal, to rid himself of the condition in which he acquiesced, and from which he could not escape by such direct appeal? We think the appellee ought not to be permitted to seek by a circuitous proceeding a relief which the law forbids him directly."

With the greatest deference to the court that so ruled we think it was straining the point too much. Giving the bond of indemnity was but an incident in the proceedings, an act ordered to be done to protect the defendant from a possible claim against which the plaintiff as his vendor was bound to warrant him. It does not appear to us to be that acquiescence in a judgment that precludes a party from disputing its correctness and seeking relief from it. The present plaintiff like Williams had a judgment for all he claimed. The counter-judgment against him was obtained by his adversary in the same suit. He could not execute the judgment except in its entirety. He could not obtain a writ of *fi. fa.* upon it without the credit set forth in it, and to hold that the execution of the judgment in the only way possible to him must be deemed a voluntary acquiescence in that part of it that condemned him in damages would be giving the defendant's devolutive

appeal all the force and effect of a suspensive appeal. The acquies-
cence, if there be any, was enforced and not voluntary. Johnson v.
Clark, 29 Ann. 762.

The provisions of the Code of Practice, arts. 567, 578, 592, formulate
the right to execute a judgment pending an appeal if it is not suspen-
sive, attach to the voluntary execution of a judgment the penalty of
deprivation of appeal, and grant to appellees permission to have a
judgment amended by an answer and prayer therefor. The execution
of a judgment pending a devolutive appeal is always at the peril of the
judgment-creditor, for if reversed the execution stands for naught. If
the execution is voluntary he cannot appeal, and we approve the ruling
in Williams v. Duer so far as it holds that when one cannot appeal
because of a voluntary acquiescence neither can he amend by answer-
ing the appeal, but in that case as in this the acquiescence was not
voluntary, and the prayer for an amendment is not shut out thereby.

In St. Romes v. Cotton Press Co., 31 Ann. 228, the plaintiff and ap-
pellant moved to withdraw her appeal which the defendant opposed.
The Court sustained the defendant saying, "an appellant may at any
time acquiesce in the judgment appealed from, but the effect of that
acquiescence only operates to prevent any change in the judgment for
the benefit of the appellant"—and no one will dispute that.

The defendant's brief informs us that the plaintiff has got back the
property he sold the defendant in 1881 for $20,000 with all the im-
provements he put on it for the balance of the purchase-price and after
deducting the $5400 damages awarded the defendant. That is a mis-
fortune the risk of which he took when he bought on credit. It is ap-
parent from the plaintiff's letters to his lawyers that he would gladly
have avoided taking back the property even at such a sacrifice of the
defendant's interests and that he much preferred the payment of his
debt in money.

The defendant's counsel gloomily predicts the consequences to our
State and to its agricultural prosperity if such proceedings as these
are sanctioned by the courts. He is mistaken. Capital never flows
in insecure channels. Our fields cannot be cultivated without it. Con-
fidence, the very life-blood of credit, can be created only by giving the
capitalists assurance that the law will inexorably enforce his claim
when it is just.

The defendant calls attention to a supposed error in the date of a
payment endorsed on one of the notes. That payment is stated to be

6

of the interest up to Dec. 1, 1884 and the judgment is for interest from that date.

It is ordered and decreed that the judgment of the lower court in favour of the plaintiff for the amount of his mortgage claim, interest and attorneys fees, with such credits of payments as are therein mentioned, and for recognition of his mortgage as therein set out is affirmed, and that the judgment in favour of the defendant against the plaintiff for five thousand four hundred dollars as damages on his reconventional demand and dissolving the sequestration be avoided and reversed, and it is now adjudged that the defendant David Wise take nothing by said demand and that the writ of sequestration is maintained and ordered to be enforced, the defendant to pay all costs of both courts.

### By the Court:

The application for rehearing in this case is allowed, and the rehearing granted is restricted to the question of the alleged acquiescence of plaintiff in the judgment rendered on defendant's reconventional demand for damages, as affecting plaintiff's right to move on appeal as brought up by defendant, for the reversal of said judgment.

### On Rehearing.

FENNER, J.   The only question open for our consideration under the terms of our order granting a rehearing is: Whether the plaintiff has cut off his right to ask a reversal of the judgment rendered against him on the reconventional demand of defendant because he has " acquiesced in the same by executing it voluntarily." C. P. art. 567.

What are the facts?

Plaintiff recovered a judgment against defendant for (say) $15,000, and, in the same decree, defendant recovered a judgment against plaintiff for $5400.

Defendant appealed devolutively from the whole decree, thus bringing before us for review both judgments.

In this case, the cause of action in the reconventional demand did not grow out of, or have any connection with, the principal demand, but was entirely distinct from it—the reconvention being allowed solely because plaintiff was a non-resident.

The two judgments were as separate and distinct as if rendered in different actions—so much so that, had one of the judgments only been appealable, it alone could have been appealed from and the other could not have been reviewed.  3 Rob. 387; 10 Rob. 438; 11 Rob. 12; 5 Ann. 105; 6 Ann. 579; 14 Ann. 429.

From this essential separateness of the two judgments, it follows that the execution of one, while implying acquiescence in *it*, by no means implied acquiescence in the other. To deny plaintiff's right to execute his judgment would be to give to defendant's devolutive appeal the effect of a suspensive appeal.

Had plaintiff simply issued execution for the whole amount of the judgment in his favor, certainly no inference of acquiescence in the other judgment could have been drawn. But had he done this, he would have exceeded his legal right. Why? Because the two judgments co-existing, and being equally exigible, the law operated a compensation between the two—a provisional compensation to receive effect as long as both judgments existed or until one of them had been reversed on appeal. Sandel vs. George, 18 Ann. 526; Lemane vs. Lemane, 27 Ann. 694.

If he had issued execution for the whole, the defendant's right, by injunction, to reduce it to the extent of the excess over his own judgment, would have been perfectly clear under C. P. 298, par. 10.

Is plaintiff's case to be prejudiced because he has respected the legal rights of defendant and the plain mandate of the law, by issuing execution only for the excess of his judgment over that of defendant?

If plaintiff were asking an amendment of the judgment in his favor, he would be precluded by his voluntary execution of it; but as to the judgment against him, there is no such acquiescence. He has simply submitted to the effect which the law gave to it as provisionally compensating his own judgment so long as it existed unreversed. This submission he could not avoid; it was forced and not voluntary; and does not constitute such *voluntary* acquiescence as precludes him from asking that, in our review of that judgment, we should consider his rights as well as those of defendant.

The correctness of plaintiff's judgment was never questioned below or in this Court. It greatly exceeded that of defendant in reconvention. It was not suspensively appealed from; and upon what principle he could be refused the right of executing it to the extent of its excess, is certainly not apparent. Nor can we see how the exercise of this plain right should involve acquiescence in the other judgment.

Had he applied to the clerk for a writ of *fi. fa.* for the whole amount of his judgment, and had the clerk refused to issue it without crediting the amount of the concurrent judgment against him, and had he applied to the court for relief by rule on the clerk, it is manifest that the court would have sustained the clerk and refused relief. This makes

it clear that, in the execution issued, he exercised his whole legal right and waived none.

It is, therefore, ordered that our former decree herein remain undisturbed.

Todd and Watkins, JJ., dissent, and the former reserves the right to file reasons hereafter.

### DISSENTING OPINION.

TODD, J. The plaintiff obtained a judgment against the defendant for $12,750 subject to credits amounting to about $2000, and in the same suit judgment was rendered in favor of the defendant on a reconventional demand for $5400. The defendant took a devolutive appeal to this court, and the plaintiff, in his answer to the appeal prays that the judgment in reconvention against him be reversed.

The counsel for the defendant in this court denies the right of the plaintiff to demand the reversal of the judgment in favor of the defendant or to ask an amendment of the judgment in any respect on the ground that the plaintiff had acquiesced in the judgment.

It further appears that this alleged acquiescence was based upon the following facts:

Both plaintiff and defendant obtained an order of appeal from the judgment devolutive and suspensive. Defendant Wise alone perfected his appeal, the same being devolutive.

Plaintiff, a few days after the order of appeal was rendered, caused execution to issue, and in the writ of execution the amount of the judgment of Wise, defendant against him, for $5400, was credited on the judgment in his favor against Wise, and the writ issued for the balance, and the property specially mortgaged to secure the debt and recognized in the judgment, was seized and sold, and adjudicated to the plaintiff.

The question, and the only one now before the court for determination, is whether the acts of the plaintiff and appellee with respect to this judgment, can be held to establish his acquiescence in the judgment in contemplation of law, so as to debar him from seeking to reverse it, or change it in his favor.

After a thorough consideration of the matter and a close re-examination of the authorities bearing on it, I am constrained to answer this question affirmatively.

There were two distinct judgments rendered by the district court, one in favor of plaintiff for the amount of his demand, and recogniz-

ing the special mortgage securing it on the mortgaged property. The other on a claim in no manner connected with the principal demand, and urged by way of reconvention.

Tne judgment in the principal demand, whilst allowing, by its terms, certain credits on this demand, directs or allows no credit for or on account of the reconventional demand. The judgment did not, therefore, by its terms, require that this credit for the reconventional demand, liquidated by a judgment though it was, should have been inserted or allowed in the writ or indorsed upon it.

In our former decision the opinion expressed why this crediting the one judgment upon the other and causing execution to issue for the balance did not show an acquiescence, was, because such a course was not voluntary, but compulsory.

The plaintiff was not compelled to execute his judgment at all; at least, if he desired to be safe from any complication or risk, and execute his judgment in its entirety, he might have waited until the defendant's appeal was tried.

He might have had execution issue on his judgment, giving only the credits that the judgment itself allowed. It was a distinct, separate and independent judgment from the other on the reconventional demand ; and though such execution might have been met by an injunction, yet such injunction could only have affected the execution of plaintiff's judgment to the amount of the judgment in reconvention, and plaintiff could thus have gotten the benefit of his judgment and the right to execute it for the excess of one judgment over the other, without contributing any act of his own to accomplish this object.

If plaintiff had gone forward and paid this judgment, and thus have gotten it out of his way, no one could then doubt that he had acquiesced in it. What he did do was essentially equivalent to its payment. By crediting it on his judgment he took it in payment *pro tanto* of the judgment. Two judgments stood against each other for different amounts, he took both under his control, imputing one, so far as it went, to the payment of the other.

I cannot, from any standpoint, see how this disposition of the defendant's judgment could be regarded in any other light than the virtual execution of the judgment. That when the credit was given for its amount, that it was thereby extinguished, and of course, fully executed.

Thus concluding, I am of opinion that the plaintiff by his acts lost the right of changing or amending the judgment in his favor either

through an appeal or by prayer for an amendment in his answer to the appeal.

I therefore dissent from the opinion and decree of the majority of the court.

Justice Watkins concurs in this opinion.